IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MICHEL ARBID, | |
| Plaintiff, | **8:23CV401** |
| vs. | |
| | **MEMORANDUM AND ORDER** |
| KYLE W.D. NELSON, | |
| Defendant. | |

This matter is before the Court on Plaintiff's motion for partial summary judgment, Filing No. 44, and Defendant's motion for summary judgment, Filing No. 49. This is an action for defamation and slander. Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332. Plaintiff, Michel Arbid ("Arbid") is a resident of Collier County, Florida, and Defendant, Kyle W.D. Nelson currently resides in Minnesota (former resident of Nebraska). The Court has personal jurisdiction over the defendant because he removed this action to this district and voluntarily submitted to the jurisdiction of this court. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this district. Count 1 alleges defamation per se under Neb. Rev. Stat. § 25-839 and Count II alleges common law slander.

I.    BACKGROUND

In 2013, Arbid owned 30 percent of Med One Health Care, a Virginia Company. Arbid later sold his share to Selwyn Mahone in 2022, ending his ownership and employment with Med One. Filing No. 50-3 at 2. According to Arbid, Med One did not go bankrupt, and it did not have any financial issues.

1

Arbid is a co-founder and owner of Ventura LLC ("Ventura"), a Nebraska Corporation. Ventura is owned and operated by Arbid and his two business partners, Jeff Shaffar ("Shaffar") and John Bowsman ("Bowsman"). In addition to holding an ownership stake in Ventura, Arbid serves as the Company's Chief Financial Officer ("CFO"). Defendant, Kyle Nelson ("Nelson") worked for Ventura from June 2022 until December 2022 as its Chief Operating Officer ("COO"). Filing No. 64 at 3.

Arbid alleges Nelson purposefully and maliciously made false and disparaging statements about him to Ventura employees and partners with the intent of diminishing Arbid's reputation, credibility, and standing. Filing No. 42 at 3, ¶ 19–20. After noting negative trends in financial and optional performance, Arbid had several conversations with Nelson to address and correct the noted financial and operational issue. Id. at 2, ¶ 11–12. Shortly thereafter, Arbid alleges Nelson began making disparaging comments to Ventura employees that questioned Arbid's competence, and mental and emotional stability. Id. at ¶ 13. Arbid also alleges Nelson told employees that Arbid had confronted Nelson and threatened to solve things the Lebanese way with an AK-47. Id. at ¶ 14. Plaintiff claims no such confrontation ever took place. Id. at 3, ¶15. Further, Abrid claims he did not mention a firearm in any conversation he ever had with Nelson. Id. Arbid alleges Nelson told Ventura employees that he (Nelson) planned to remove and replace Arbid and would buy out his shares if necessary. Id. at ¶ 16. Plaintiff alleges Nelson made similar disparaging comments about Arbid to the Ventura partners which questioned Arbid's competence, temperament, and suitability for leadership. Id. at ¶ 17. According to Arbid, Nelson told Arbid's employees and business partners that Arbid previously owned a company that went bankrupt. Filing No. 45 at 3. Plaintiff alleges

Nelson's pattern of defaming Arbid was part of an attempt to pressure Arbid to sell his shares to Nelson. Filing No. 42 at 3, ¶ 21. As a result of Nelson's wrongful conduct, Arbid alleges he suffered injury to his good name, reputation, and standing among this partners and Ventura's employees. *Id.* at ¶ 22.

Plaintiff is only moving for summary judgment on liability with respect to the following three statements: 1. Telling Gebert that Arbid previously owned a business that "went to shit, it went bankrupt, its broke, it doesn't exist"; 2. Telling the business partners and co-owners, Jeff Shaffar, that Arbid's prior company went bankrupt; and 3. Telling John Bowsman that Arbid's prior company went bankrupt. Filing No. 45 at 6.

## II.    LAW

### A.  *Summary Judgment Standard*

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "an adverse party cannot produce admissible evidence to support" a fact essential to the nonmoving party's claim. Fed. R. Civ. P. 56(c)(1)(A) & (B). The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The movant 'bears the initial responsibility of informing the district court of the basis for its motion, and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex Corp.*, 477 U.S. at 323). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324). A "genuine" issue of material fact exists "when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003). "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." *Id.* "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004). If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Anderson*, 477 U.S. at 251.

### B.  *Defamation*

In an action for a libel or slander it shall be sufficient to state, generally, that the defamatory matter was published or spoken of the plaintiff, and if the allegation be denied, the plaintiff must prove on the trial the facts, showing that the defamatory matter was published or spoken of him. Neb. Rev. Stat § 25-839.

4

Under Nebraska law, a claim of defamation requires: "(1) a false and defamatory statement concerning the claimant, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Choice Homes, LLC v. Donner*, 976 N.W.2d 187, 202–03 (Neb. 2022); *see Palmtag v. Republican Party of Nebraska*, 999 N.W.2d 573, 585 (Neb. 2024). Slander is a type of defamation where the defamatory words are spoken. *Id.*

Plaintiff does not need to establish special harms in defamation per se. *Matheson v. Stork*, 477 N.W.2d 156, 160 (Neb. 1991); *Palmtag*, 999 N.W.2d at 585. Statements are defamatory per se "if they falsely impute the commission of a crime involving moral turpitude, an infectious disease, or unfitness to perform the duties of an office or employment, or if they prejudice one in his or her profession or trade or tend to disinherit one." *Matheson*, 477 N.W.2d at 158. In determining whether a communication is defamation per se, the court must construe the questioned language "in its ordinary and popular sense." *Id.*

"The threshold question in a defamation suit is whether a reasonable fact finder could conclude that the published statements imply a provably false factual assertion." *Id.* (citing *Wheeler v. Nebraska State Bar Ass'n*, 508 N.W.2d 917 (Neb. 1993)). "Statements of fact can be defamatory whereas statements of opinion—the publication of which is protected by the First Amendment—cannot." *Id.* Distinguishing between a statement of fact and a statement of opinion presents a question of law for the trial judge to decide. *Id.* In deciding whether a statement is a statement of fact or a statement of opinion, a trial judge should consider "(1) whether the general tenor of the entire work

negates the impression that the defendant asserted an objective fact, (2) whether the defendant used figurative or hyperbolic language, and (3) whether the statement is susceptible of being proven true or false." *Id.*

To establish qualified privilege or conditional privilege, a party must prove the statement was made: (1) in good faith, without actual malice; (2) with reasonable or probable grounds for believing it to be true; (3) by someone with an interest in the subject matter to another who has an interest in it or stands in such relation that it is a reasonable duty, or is proper, for the speaker to give the information. *See generally Helmstadter v. N. Am. Biological, Inc.*, 559 N.W.2d 794 (Neb. Ct. App. 1997); *Molt v. Lindsay Mfg. Co.*, 532 N.W.2d 11 (Neb. 1995). "The question of whether a statement was maliciously made is a question of fact for the jury to decide." *Helmstadter*, 559 N.W.2d at 801.

A communication is privileged if, made in good faith, without actual malice, with reasonable or probable grounds for believing it to be true, on a subject matter in which the author of the communication has an interest, or in respect of which the authors have a duty, public, personal, . . . made to a person having a corresponding duty. A communication between those sharing a common interest it conditionally privileged. *Id.* (citing *Turner v. Welliver*, 411 N.W.2d 298 (Neb. 1987)).

It appears that there are two main issues: (1) whether the statements made by Nelson about Arbid qualify as defamation per se, meaning they falsely impute an unfitness to perform the duties of an office or employment or if they prejudice one in his or her profession or trade or tend to disinherit one; and (2) whether the communication between John Bowsman and Jeff Shaffer are unprivileged.

### III.    DISCUSSION

Arbid moves for summary judgment on liability regarding the three statements defendant published to third parties that imputed to plaintiff an unfitness to perform the duties of his employment. Filing No. 44 at 1, ¶ 2. Arbid claims the evidence does not have genuine issues of material fact because defendant's statements were per se defamatory and slanderous, and plaintiff is entitled to judgment as a matter of law. *Id.* at ¶ 3. To support this motion, plaintiff relies on the pleadings on file on this matter, plaintiff's statement of undisputed material facts, plaintiff index of evidence and accompanying evidentiary material, and plaintiffs brief in support of this motion. *Id.* at 1–2, ¶ 4.

There are two types of defamation. The regular and per se. Per se liability arises when the nature of the false hood is such that harm to the subject is presumed. *Palmtag,* 999 N.W.2d 573. Specifically, defamation per se is actionable if (1) falsely imputed the commission of a crime involving moral turpitude, (2) an infectious disease, or (3) unfitness to perform duties of an office or employment, or if they prejudice his or her profession or trade or tend to disinherit one. *Id.* Arbid claims there is no material fact in dispute and that Nelson's conduct falls squarely in the third prong of negligence per se. Filing No. 45 at 5–6. In proving a publication, Arbid is not required to show that the slander was made known to the publication generally. It is enough that the plaintiff shows that it was orally communicated to a single person other than the plaintiff. *McCune v. Neitzel,* 457 N.W.2d 803 (Neb. 1990). Similarly, defendant cannot invoke any privilege to justify or excuse his words. Filing No. 45 at 7. With regards to the harm, in per se, words classified at defamatory per se are so obviously harmful that no proof of damage ought to be required. *Palmtag,* 999 N.W.2d 573.

One such class of words that are inherently damaging and actionable are those that falsely impute an "unfitness to perform the duties of an office or employment, or [] prejudice one in his or her profession or trade or tend to disinherit one." *Id.* at 582. Arbid contends this is exactly what happened in this case.

Arbid claims that the bankrupt statement is undisputedly false: Arbid partially owned one company before Ventura Called Med 1 Healthcare, Filing No. 47 at 4, Undisputed Facts No. 25, and it did not go bankrupt at any point. Filing No. 47 at 4, Undisputed Facts No. 26. There is no dispute that defendant made these statements, because there is a recording with the conversation with Geber. Filing No. 45 at 7.

Nelson responds to Arbid's allegations, arguing the real issue is whether this type of statement qualifies as defamation per se. Filing No. 60 at 4. He contends that the statement made to Gebert is not actionable, as the statement was just simply part of a discussion between Nelson and Gebert regarding whether plaintiff was "rich." Also, the statement is about the other company, not about Ventura. So, in McCune, argues Nelson, the context matters. ("[W]ords complained of cannot be isolated and must be considered in the context of the entire recital or verbal exchange." *McCune*, 457 N.W.2d at 808). When looking at the entire context, nothing Nelson said, he argues, indicated the plaintiff is unfit to perform his duties at Ventura. Filing No. 60 at 6. Nelson further argues that the statements to Shaffar and Bowsman are privileged, basically stating that it is a business type of conversation where the individuals should be able to speak their minds to their bosses. *See id.* at 9.

In Nelson's Motion for summary, Filing No. 49, Defendant asserts there is no genuine issue of material fact with respect to the matters set forth in the defendant's

statement of undisputed fact. *Id.* at 1, ¶ 1. Defendant argues he is entitled to judgement as a matter of law for the reasons in the brief in support. *Id.* at ¶ 2. To support this motion, Defendant's statement of undisputed material fact, index of evidence, and brief in support are incorporated. *Id.* at ¶ 3.

## IV.    CONCLUSION

The Court has carefully reviewed all the evidence submitted by the parties, the briefs in support and opposition, the statements of material facts, and the relevant law. The Court finds there are disputed material facts as outlined herein, and thus, neither party is entitled to summary judgment. It is clear from the evidence that Nelson made the comments at issue in this lawsuit. The finder of fact should determine the context of the verbal exchanges. The parties clearly disagree on this point. The Court can rule further at trial, if appropriate.

THEREFORE, IT IS ORDERED THAT:

1.    Plaintiff's motion for partial summary judgment, Filing No. 44 is denied.

2.    Defendant's motion for summary judgment, Filing No. 49, is denied.

Dated this 5th day of December, 2025.

BY THE COURT:

s/ Joseph F. Bataillon_____
Senior United States District Judge